# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

Filed: March 17, 2026

```
* * * * * * * * * * * * * * * * * * *
MARCIA PETRIE, as Personal         *
Representative of the Estate of    *
DANIEL J. PETRIE,                  *         UNPUBLISHED
                                   *
         Petitioner,               *         No. 18-1584V
                                   *
v.                                 *         Special Master Dorsey
                                   *
SECRETARY OF HEALTH                *         Attorneys' Fees and Costs.
AND HUMAN SERVICES,                *
                                   *
         Respondent.               *
                                   *
* * * * * * * * * * * * * * * * * * *
```

Nancy Routh Meyers, Turning Point Litigation, Greensboro, NC for Petitioner.
Naseem Kourosh, United States Department of Justice, Washington, DC, for Respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On October 12, 2018, Marcia Petrie ("Petitioner"), as personal representative of the estate of Daniel J. Petrie ("Mr. Petrie"), filed a petition for compensation under the National Vaccine Injury Compensation Program ("Vaccine Program")[2] alleging that Mr. Petrie suffered transverse myelitis ("TM") as a result of an influenza ("flu") vaccination administered on November 5, 2015.  Petition at Preamble (ECF No. 1).  During the case's pendency, on October 18, 2022, Mr.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the Decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 et seq. (hereinafter "Vaccine Act" or "the Act").  Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

1

Petrie passed away.  Petitioner further alleged that Mr. Petrie's death was the sequela of his alleged vaccine-related injury.  On March 7, 2025, the undersigned issued a decision based on stipulation.  Decision Based on Stipulation dated Mar. 7, 2025 (ECF No. 166).

On September 3, 2025, Petitioner filed a motion for attorneys' fees and costs. Petitioner's Motion for Attorneys' Fees and Costs ("Pet. Mot."), filed Sept. 3, 2025 (ECF No. 171).  Petitioner requests compensation in the amount of $181,066.27, representing $131,063.80 in attorneys' fees and costs to Turning Point Litigation, $31,302.47 in attorneys' fees and costs to Ward Black Law, and $18,700.00 in expert costs to Dr. Steinman.  Id. at 1.  Petitioner warrants that she has personally incurred costs of $10,511.57 relating to probate.  Id. at 2.  Thus, in total, Petitioner requests $191,577.84.

Respondent filed his response on September 5, 2025, stating he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case."  Respondent's Response to Pet. Mot. ("Resp. Response"), filed Sept. 5, 2025, at 2 (ECF No. 172).  However, Respondent indicated it was not clear whether Petitioner's request for reimbursement of expenses incurred to retain a probate attorney "was incurred solely for the purpose of receiving, disbursing, and administering the vaccine settlement proceeds."  Id. at 4 n.2 (quoting Pet. Mot. at 2) (citing Statement of Pet. Personal Costs, filed Sept. 3, 2025 (ECF No. 171-4)).  Respondent further noted he "is not aware of [] precedent pertaining to a person becoming the representative of the estate of his or her deceased spouse, as this would, in many instances, occur regardless of whether a vaccine claim had been filed on behalf of the deceased."  Id.  Respondent deferred resolution of this issue to the Special Master.  Id.

Petitioner filed a reply on September 11, 2025, maintaining Petitioner's probate costs are reimbursable under the Vaccine Program and citing supportive case law.  Pet. Reply in Support of Pet. Mot. ("Pet. Reply"), filed Sept. 11, 2025 (ECF No. 173).  Petitioner also amended her fees request for preparation of her reply by $1,274.00.  Id. at 3-5.  This brings Petitioner's total request to $192,851.84.

The matter is now ripe for disposition.

For the reasons discussed below, the undersigned **GRANTS IN PART** Petitioner's motion and awards a total of **$184,063.82**.

## I.      DISCUSSION

Under the Vaccine Act, the special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation.  § 15(e)(1).  When compensation is not awarded, the special master "may" award reasonable attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  Id.  In this case, because Petitioner was awarded compensation pursuant to a stipulation, she is entitled to a final award of reasonable attorneys' fees and costs.

2

### A.    Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorney's fees and costs under the Vaccine Act.  Avera v. Sec'y of Health & Hum. Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008).  Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorney's fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).  Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings.  Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service.  See Savin v. Sec'y of Health & Hum. Servs., 85 Fed. Cl. 313, 316-18 (2008).  Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."  Saxton v. Sec'y of Health & Hum. Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done."  Id. at 1522.  Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by respondent and without providing a petitioner notice and opportunity to respond.  See Sabella v. Sec'y of Health & Hum. Servs., 86 Fed. Cl. 201, 209 (2009).

A special master need not engage in a line-by-line analysis of a petitioner's fee application when reducing fees.  Broekelschen v. Sec'y of Health & Hum. Servs., 102 Fed. Cl. 719, 729 (2011).  Special masters may rely on their experience with the Vaccine Program and its attorneys to determine the reasonable number of hours expended.  Wasson v. Sec'y of Health & Hum. Servs., 24 Cl. Ct. 482, 484 (Fed. Cl. Nov. 19, 1991), rev'd on other grounds & aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993).  Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours clamed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee application."  Saxton, 3 F.3d at 1521.

#### i.    Reasonable Hourly Rates

Ms. Meyers initiated her representation of Petitioner in this matter while she worked at Ward Black Law.  Petitioner requests the following hourly rates for the work of her counsel at Ward Black: for Ms. Nancy Meyers, $350.00 per hour for work completed in 2017, $375.00 per hour for work completed in 2018, $390.00 per hour for work completed in 2019, and $400.00 per hour for work completed in 2020.  Petitioner also requests rates between $145.00 and $150.00 per hour for work of her counsel's paralegals from 2017-2020.

Ms. Meyers then moved her practice to Turning Point Litigation.  Petitioner requests the following hourly rates for the work of her counsel at Turning Point Litigation: for Ms. Nancy Meyers, $400.00 per hour for work performed in 2020, $430.00 per hour for work performed in 2021, $460.00 per hour for work performed in 2022, $490.00 per hour for work performed in

3

2023, and $530.00 per hour for work performed in 2024 and 2025; and for Mr. Tyler Nullmeyer, $290.00 per hour for work performed in 2023. Petitioner also requests rates between $150.00 and $180.00 per hour for work of her counsel's paralegals from 2020 to 2025.

The undersigned finds these rates consistent with what counsel have previously been awarded for their Vaccine Program work, and finds them to be reasonable herein.

### ii.    Reasonable Hours Expended

In reducing an award of fees, the goal is to achieve rough justice, and therefore a special master may take into account their overall sense of a case and may use estimates when reducing an award. See Florence v. Sec'y of Health & Hum. Servs., No. 15-255V, 2016 WL 6459592, at *5 (Fed. Cl. Spec. Mstr. Oct. 6, 2016) (citing Fox v. Vice, 563 U.S. 826, 838 (2011)). It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable. Bell v. Sec'y of Health & Hum. Servs., 18 Cl. Ct. 751, 760 (1989); Rodriguez v. Sec'y of Health & Hum. Servs., No. 06-559V, 2009 WL 2568468 (Fed. Cl. Spec. Mstr. July 27, 2009). Petitioner bears the burden of documenting the fees and costs claimed. Rodriguez, 2009 WL 2568468 at *8.

The undersigned has reviewed the submitted billing entries and finds the total number of hours billed to be largely reasonable. However, the undersigned finds a small reduction necessary.

Petitioner requests $117,214.00 in attorneys' fees for Turning Point Litigation.

At Turning Point Litigation, Petitioner's counsel, Ms. Meyers, and her paralegal billed for non-compensable tasks, including sending records to experts, filing documents, and preparing documents for filing.[3] It is well known in the Vaccine Program that billing for some administrative tasks, even at a paralegal rate, is not permitted. See, e.g., Rochester v. United States, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates"); Paul v. Sec'y of Health & Hum. Servs., No. 19-1221V, 2023 WL 1956423, at *3 (Fed. Cl. Spec. Mstr. Feb. 13, 2023) ("Clerical and secretarial tasks should not be billed at all, regardless of who performs them."). The preparation of records and exhibits for filing has repeatedly been deemed administrative and thus non-compensable. See, e.g., Wallace v. Sec'y of Health & Hum. Servs., No. 17-1074V, 2018 WL 6977489, at *2 (Fed. Cl. Spec. Mstr. Nov. 19, 2018) (noting the preparation of medical records an administrative and noncompensable task); Phelan ex rel. A.P. v. Sec'y of Health & Hum. Servs., No. 18-1366V, 2025 WL 1453777, at *3 (Fed. Cl. Spec. Mstr. Apr. 30, 2025) (same). Filing exhibits are also considered administrative tasks. See, e.g., Wakileh v. Sec'y of Health & Hum. Servs., No. 21-1136V, 2023 WL 9228198, at *3 (Fed. Cl. Spec. Mstr. Dec. 18, 2023).

---

[3] For example, there are numerous billing entries for "submission" of filings to Court (i.e., filing documents); "submit[ting]" (i.e., sending via email or mail) files to experts; and organizing, indexing, and preparing exhibits for submission/filing. None of these are compensable tasks.

4

Additionally, Ms. Meyers and her paralegal engaged in duplicative billing practices on numerous occasions (i.e., both Ms. Meyers and her paralegal billed for "receipt and review" of the same filings),[4] which requires further reduction. See, e.g., Young v. Sec'y of Health & Hum. Servs., No. 16-602V, 2017 WL 7360354, at *2 (Fed. Cl. Spec. Mstr. Aug. 31, 2017) (reducing a fee award for duplicative work performed by both the attorney and a paralegal).

These are not new issues to Ms. Meyers. See, e.g., Gray ex rel. G.G. v. Sec'y of Health & Hum. Servs., No. 23-0461V, 2025 WL 2401994, at *2 (Fed. Cl. Spec. Mstr. July 18, 2025); Lisk v. Sec'y of Health & Hum. Servs., No. 18-1467V, 2025 WL 2218691, at *2 (Fed. Cl. Spec. Mstr. July 8, 2025); Greco v. Sec'y of Health & Hum. Servs., No. 20-1932V, 2024 WL 4930633, at *2-3 (Fed. Cl. Spec. Mstr. Nov. 6, 2024); Dileo v. Sec'y of Health & Hum. Servs., No. 16-1639V, 2019 WL 1149785, at *2 (Fed. Cl. Spec. Mstr. Feb. 21, 2019).

A special master need not engage in a line-by-line analysis of a petitioner's fee application when reducing fees. Broekelschen, 102 Fed. Cl. at 729. It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Saxton, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged so long as a "concise but clear" justification for the reduction is provided. Abbott v. Sec'y of Health & Hum. Servs., 135 Fed. Cl. 107,111 (2017). Special masters need not explain how many hours are appropriate. Raymo v. Sec'y of Health & Hum. Servs., 129 Fed. Cl. 691, 702 (2016). "It would be unreasonable, however, to expect the Special Master to explain how each individual entry affected [her] final calculation, as in conducting fee determinations tribunals 'need not, and indeed should not, become green-eyeshade accountants.'" Abbott, 135 Fed. Cl. at 112 (quoting Fox, 563 U.S. at 838).

The undersigned finds a reduction to Turning Point Litigation attorneys' fees by 2% reasonable and appropriate. This results in a reduction of **$2,344.28**.[5]

Petitioner also requests attorneys' fees of $27,687.00 for work performed at Ward Black Law. While at Ward Black Law, Petitioner's counsel and counsel's paralegal similarly billed for non-compensable tasks and engaged in duplicative billing. Thus, the undersigned finds a 2% reduction of Ward Black Law's attorneys' fees reasonable and appropriate. This results in a reduction of **$553.74**.[6]

---

[4] See, e.g., Pet. Mot. at 6-7 (entries dated September 28, 2020, November 30, 2020, January 11, 2021, and February 8, 2021). This is not an exhaustive list.

[5] $117,214.00 x 0.02 = $2,344.28.

[6] $27,687.00 x 0.02 = $553.74.

### B.    Attorneys' Costs

Petitioner requests a total of $33,823.80 in attorneys' costs to Turning Point Litigation. This amount is comprised of acquiring medical records, photocopies, shipping costs, legal research, and expert fees for Dr. Lawrence Steinman[7] and Dr. David Wilson.  The undersigned has reviewed the requested costs and finds them to be largely reasonable.  However, a small reduction is necessary for Dr. Wilson.  Dr. Wilson requests a rate of $550.00 per hour for work performed in 2022 and 2023.  However, this is a $50.00 increase from what he has previously been awarded.  See Gudaitis v. Sec'y of Health & Hum. Servs., No. 17-1570V, 2023 WL 4638430, at *3 (Fed. Cl. Spec. Mstr. June 29, 2023); Eloyan v. Sec'y of Health & Hum. Servs., No. 18-1450V, 2024 WL 3913710, at *5 (Fed. Cl. Spec. Mstr. July 8, 2024) (same).  And there is no explanation to support this increase.  As such, the undersigned will award a rate of $500.00 to Dr. Wilson, which results in a reduction of Dr. Wilson's costs by **$1,162.50**.[8]

Petitioner also requests costs of $3,615.47 to Ward Black Law, representing the filing fee, acquiring medical records, photocopies, and shipping costs.  The undersigned has reviewed the requested costs and finds them to be reasonable and will award them in full.

### C.    Petitioner's Costs

Petitioner requests $10,511.57 in costs related to probate.  Respondent objected to this cost because it was not clear whether Petitioner's request for reimbursement of expenses incurred to retain a probate attorney "was incurred solely for the purpose of receiving, disbursing, and administering the vaccine settlement proceeds."  Resp. Response at 4 n.2 (quoting Pet. Mot. at 2).  Respondent further noted he "is not aware of [] precedent pertaining to a person becoming the representative of the estate of his or her deceased spouse, as this would, in many instances, occur regardless of whether a vaccine claim had been filed on behalf of the deceased."  Id.  Petitioner maintained these costs were "incurred solely for the purpose of receiving, disbursing, and administering the vaccine settlement proceeds" and are thus reimbursable.  Pet. Mot. at 2; Pet. Reply at 2.

The Vaccine Act limits the amount of costs to those "incurred in any proceeding on [a Vaccine Act] petition."  § 15(e)(1).  A petitioner in the Vaccine Program who incurs probate expenses that would not have been incurred but-for the claim in the Vaccine Program may be reimbursed for those expenses.  McCullouch v. Sec'y of Health & Hum. Servs., 923 F.3d 998, 1002 (Fed. Cir. 2019).  Probate costs are generally compensable under the Vaccine Act if establishing the estate was "an essential prerequisite condition" to obtaining an award that must "be fulfilled in order for [the] award to be made."  Haber v. Sec'y of Health & Hum. Servs., No 09-458V, 2011 WL 839111, at *2 (Fed. Cl. Spec. Mstr. Feb. 14, 2011); see also Ceballos ex rel. Ceballos v. Sec'y of Health & Hum. Servs., No. 99-97V, 2004 WL 784910, at *20-22 (Fed. Cl. Spec. Mstr. Mar. 25, 2004) (awarding guardianship costs where the costs were deemed

---

[7] Although counsel's motion has a separate cost category relating to Dr. Steinman, the undersigned will include these costs with counsel's other costs.

[8] 23.25 hours x ($550.00 - $500.00) = $1,162.50.

6

associated with fulfilling a condition to receiving a Vaccine Program award that "[was] set by either court order or as an element of the agreed-upon settlement with [R]espondent").

However, activities in a probate proceeding that are not attributable to the Vaccine Program claim have been determined to not be reimbursable.  For example, "[w]hen an estate would have been created regardless of the pendency of the Vaccine Program claim, a petitioner is not entitled to reimbursement of all attorneys' fees and costs incurred in the probate court." Broussard ex rel. Broussard v. Sec'y of Health & Hum. Servs., No. 18-302V, 2025 WL 2733619, at *5 (Fed. Cl. Spec. Mstr. Sept. 3, 2025) (citing Bourche ex rel. Bourche v. Sec'y of Health & Hum. Servs., No. 15-232V, 2020 WL 6582180 (Fed. Cl. Spec. Mstr. Oct. 16, 2020)).  However, costs incurred "without court or [R]espondent involvement" are generally "not incurred 'on a petition' and thus are not compensable under the Program." Ceballos, 2004 WL 784910, at *20; see also Haber, 2011 WL 839111, at *2 (noting that "compensation is unavailable for myriad legal implications unrelated to the vaccine petition" (emphasis omitted)).

Some special masters have awarded probate costs where a petitioner passed away before the resolution of the case and probate was necessary for the case to proceed.  See, e.g., Jugon v. Sec'y of Health & Hum. Servs., No. 21-1592V, 2025 WL 3002577, *4 (Fed. Cl. Spec. Mstr. Sept. 17, 2025).  However, other special masters have found that "simply because an estate was necessary to maintain a case in the Vaccine Program, it does not automatically follow that all [probate] work was because of the Vaccine Program claim." Bourche, 2020 WL 6582180, at *4; see also Fulling v. Sec'y of Health & Hum. Servs., No. 21-1592V, 2022 WL 3023505, *3-4 (Fed. Cl. Spec. Mstr. July 11, 2022) ("recogniz[ing] that it was necessary to probate Mr. Fulling's estate in order to proceed with the case as he passed away before the case was resolved, so his wife needed to have authority to proceed on behalf of his estate, and an estate needed to be created to receive the subsequent award," but reducing the award due to billing entries not involving or related to the Vaccine claim).

Here, the undersigned generally finds reimbursement of probate costs appropriate; however, upon review, reductions are necessary and appropriate.

Petitioner requests $10,511.57 in costs related to probate.  In support, Petitioner provided three checks totaling $10,511.57 as well as an itemized bill from her probate attorneys, Smith Vavonese, that totals $6,011.57 in fees and costs for work performed between January 2023 and April 2025.  According to the retainer agreement/engagement letter, the remaining $4,500.00 was a "flat fee" for services "relating to estate and long-term care planning." Pet. Mot., Statement of Pet. Personal Costs at 3 (ECF No. 171-4) ("Pet. Personal Costs").

Petitioner maintains this "flat fee" was "for the formation of a trust to handle Petitioner's vaccine settlement monies," and should thus be granted. Pet. Status Rept., filed Mar. 11, 2026, at 1 (ECF No. 176).  For additional support, Petitioner filed a new itemized bill (totaling $4,142.50) from her probate attorneys for work performed between April 2025 and July 2025, once Petitioner received her vaccine injury settlement proceeds and for the purpose of setting up a trust for these proceeds. See Pet. Ex. 88.

7

As noted above, Respondent objects to this cost because it was not clear whether Petitioner's request for reimbursement of expenses incurred to retain a probate attorney "was incurred solely for the purpose of receiving, disbursing, and administering the vaccine settlement proceeds." Resp. Response at 4 n.2 (quoting Pet. Mot. at 2).

The undersigned finds that the $4,500.00 at issue constitutes estate and long-term planning for the decedent's wife (current Petitioner, legal representative of the Estate of Mr. Petrie). Further, the undersigned finds these costs do not relate to a Vaccine Act claim and that the Vaccine Act does not provide compensation or reimbursement of such costs.

The billing records of Smith Vavonese show that on April 27, 2025, attorney Jamie M. Smith billed for discussions related to setting up what appears to be a Medicaid sparing trust, or some similar trust, to protest assets in the future, should Petitioner need nursing home or skilled nursing care. Pet. Ex. 88 at 1. Petitioner submitted a letter from Jamie Smith dated May 9, 2025, describing the plan to "preserve and protect the vaccine settlement monies from probate and long-term care costs, while ensuring that you are financially comfortable for the rest of your life." Pet. Personal Costs at 3-5. The cost of this plan was a flat fee of $4,500.00. Id. The letter describes the legal services for estate and long-term care planning to be performed for Petitioner. This plan and the related trust exceed what was required to probate a will and/or create an estate for the purpose of receiving settlement proceeds of petitioner's decedent's vaccine-related injury. As such, the fees and costs of $4,500.00 for setting up this trust are not compensable. This results in a reduction of **$4,500.00**.

As to the remaining $6,011.57, which represents fees and costs for work performed between January 2023 and April 2025, the undersigned finds this invoice largely reasonable. Pet. Personal Costs at 11-15. However, reductions are necessary for billing entries that appear to be related to a third-party negligence claim against a skilled nursing facility ("SNF") related to care for Mr. Petrie.[9] This results in a further reduction of **$227.50**.[10]

Petitioner is thus awarded costs of **$5,784.07**.[11]

## II.    CONCLUSION

Based on all of the above, the undersigned finds that it is reasonable to compensate Petitioner and her counsel as follows:

---

[9] These entries are dated January 20, 2023 ("Email to . . . Brown Chiari regarding status of claim against Gowanda SNF. . . ."), February 13, 2023 ("Email to . . . Brown Chiari . . . ."), and February 16, 2023 ("Phone call from . . . Brown Chiari regarding negligence claim. . . ."). Pet. Personal Costs at 11-12.

[10] $32.50 + $32.50 + $162.50 = $227.50.

[11] $10,511.57 - $4,500.00 - $227.50 = $5,784.07.

8

**Turning Point Litigation**:

| | |
|---|---|
| Requested Attorneys' Fees: | $117,214.00 |
| Reduction of Attorneys' Fees: | - $2,344.28 |
| Awarded Attorneys' Fees: | $114,869.72 |
| | |
| Requested Attorneys' Costs:[12] | $33,823.80 |
| Reduction of Attorneys' Costs: | - $1,162.50 |
| Awarded Attorneys' Costs: | $32,661.30 |
| | |
| **Total Turning Point Litigation Fees and Costs:** | **$147,531.02** |

**Ward Black Law**:

| | |
|---|---|
| Requested Attorneys' Fees: | $27,687.00 |
| Reduction of Attorneys' Fees: | - $553.74 |
| Awarded Attorneys' Fees: | $27,133.26 |
| | |
| Requested Attorneys' Costs: | $3,615.47 |
| Reduction of Attorneys' Costs: | - $0.00 |
| Awarded Attorneys' Costs: | $3,615.47 |
| | |
| **Total Ward Black Law Fees and Costs:** | **$30,748.73** |

**Petitioner**:

| | |
|---|---|
| Requested Costs: | $10,511.57 |
| Reduction of Costs: | - $4,727.50 |
| **Awarded Petitioner's Costs:** | **$5,784.07** |

**Petitioner is awarded attorneys' fees and costs in the total amount of $184,063.82[13] (representing $147,531.02 for Turning Point Litigation's fees and costs, $30,748.73 for Ward Black Law's fees and costs, and $5,784.07 for Petitioner's personally incurred costs) to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.[14]

**IT IS SO ORDERED.**

---

[12] Dr. Steinman's costs are included here.

[13] After receipt, counsel shall disburse the funds appropriately. It is no longer the Court's practice to individually order checks to be disbursed to each person or firm.

[14] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Special Master